**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JEAN PAUL LOTZ, on behalf of himself and all
others similarly situated,

                Plaintiff,

     v.

ONNIT LABS, INC.,

                Defendant.

Case No.:

**COMPLAINT**

        Plaintiff Jean Paul Lotz, on behalf of himself and all others similarly situated

("Plaintiff"), by and through his undersigned counsel, Denlea & Carton LLP and Kravit Smith

LLP, states for his Complaint against Onnit Labs, Inc. ("Onnit"), as follows:

## PRELIMINARY STATEMENT



1.      This action seeks to redress the false, misleading and deceptive advertising and marketing claims that have made Onnit one of the world's largest manufacturers of a purported "memory supplement" or "brain health supplement" called "Alpha BRAIN®," namely, the claims that Alpha BRAIN® supports memory, focus and processing speed for which Alpha BRAIN® allegedly has clinical support.  As set forth in more detail below, those claims (which are the centerpiece of Alpha BRAIN®'s ubiquitous marketing campaigns) are blatantly false and deceptive because even its own flawed clinical study revealed that Alpha BRAIN® does not improve memory, focus and mental processing speed.

2.      The global market for brain-health supplements was expected to reach $5.8 billion in 2023.  A survey conducted by the AARP showed that 26% of Americans aged 50 and older regularly take supplements, believing they will maintain or enhance their brain health.  They are falling prey to false and deceptive claims and wasting their money.  The Global Council on Brain Health ("GCBH") is a prestigious independent collaborative of scientists, health professionals, scholars, and policy experts from around the world who work in the areas of brain health related to human cognition.  The GCBH has concluded:

> ***There is no convincing evidence to recommend dietary supplements for brain health in healthy older adults***…. For most people, the best way to get your nutrients for brain health is from a healthy diet.  Unless your health care provider has identified that you have a specific nutrient deficiency, there is not sufficient data to justify taking any dietary supplement for brain health.  The GCBH does not endorse any ingredient, product or supplement formulation specifically sold for brain health.  Because no government agency determines dietary supplements are safe or effective before they are sold, consumers should approach supplements claiming to improve or boost brain function with skepticism.  Because dietary supplements can be sold without a government agency first determining that they are safe or and effective before they are sold, consumers should also be aware that in addition to being a waste of money, some supplements could physically harm them.  ***Despite claims to the contrary, brain health supplements have not been established to maintain thinking skills or improve brain function.***  However,

there are many other lifestyle habits such as getting enough sleep, exercising regularly, eating a healthy diet, staying mentally active and being socially engaged that are recommended by the council.[1] (Emphasis added.)

3.      But this action has not been commenced to establish that brain-health supplements, including Alpha BRAIN®, do not work.  Instead, by this action, Plaintiff seeks to redress Onnit's false and deceptive marketing campaign built upon the misleading claim that Alpha BRAIN® improves memory generally and improves focus and mental processing speed when its own study contradicts those claims.

## THE PARTIES

4.      Plaintiff Jean Paul Lotz is a 50 year-old individual who resides in Orange County, New York.  During the relevant time period, Plaintiff was a resident of Manhattan, New York.

5.      Defendant Onnit is a Delaware corporation headquartered in Austin, Texas.

6.      Upon information and belief, Onnit manufactures, markets and sells Alpha BRAIN®.  Alpha BRAIN® is sold through its website and other retailers such as Amazon.com, Walmart, CVS, The Vitamin Shoppe, and Target.  Onnit was co-founded by prominent American commentator and podcaster, Joe Rogan.  Rogen launched *The Joe Rogan Experience* in 2009 and by 2015 it was one of the most popular podcasts in the world, regularly receiving millions of plays per episode. Spotify obtained exclusive distribution rights to *The Joe Rogan Experience* in 2020 for US$200 million.  Rogan's audience grew significantly and in 2024, Rogan renewed his deal with Spotify for an estimated $250 million.  Rogan regularly promotes Alpha BRAIN® on his podcast.

---

[1]      Global Council on Brain Health (2019). *The Real Deal on Brain Health Supplements: GCBH Recommendations on Vitamins, Minerals, and Other Dietary Supplements*.  Available at www.GlobalCouncilOnBrainHealth.org.  DOI: https://doi.org/10.26419/pia.00094.001.

7.      Onnit was sold to consumer brand giant Unilever in 2021 for an estimated $250-$400 million.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).  Based on publicly available sources, Plaintiff estimates that Onnit had annual revenues of $100,000,000.00 and estimates that it had revenues of over $18 million in New York during the three-year period preceding this action.  Statutory damages under GBL §§ 349 and 350 are $50 or $500 *per purchase* plus attorneys' fees.  Plaintiff estimates that there are thousands of potential class members in New York.

9.      The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

10.      This Court may exercise jurisdiction over Onnit because Onnit has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

**CHOICE OF LAW**

12.     New York law governs the state law claims asserted herein by Plaintiff and the

New York class he seeks to represent.

13.     New York has a substantial interest in protecting the rights and interests of New

York consumers against wrongdoing by companies that market and distribute their products

within the State of New York.

**FACTUAL BACKGROUND**

## I.     THE BRAIN-HEALTH SUPPLEMENT MARKET

14.     There is a significant market for brain-health supplements, as 26% of Americans

over the age of 50 are reported to have used them.  To differentiate one's product in this crowded

marketplace, it is not uncommon to increase one's marketing budget, or otherwise falsely to

overstate the efficacy of one's product.  Alpha BRAIN®, Onnit's flagship product, has been on

the market since 2010 and Onnit claims it has sold more than 3 million bottles.

15.     Alpha BRAIN® has faced two major competitors for the brain-health hucksterism

crown:  (a) Prevagen, sold by Quincy Bioscience  and (b) "Neuriva," sold by Reckitt Benckiser

LLC.  Both of those purveyors of purported memory supplements have been sued in class actions

and forced to pay large amounts to defrauded consumers and throttle back their baseless claims.

16.     Prevagen claimed to "improve memory within 90 days," "support healthy brain

function," and similar claims.  Prevagen's purported active ingredient is a protein called

apoaequorin, apparently derived from a species of jellyfish called *Aequorea victoria* — in other

words, the modern version of snake oil.  Needless to say, the maker of Prevagen was sued in a

number of separate class actions and compelled to pay dearly for its exorbitant claims.  Quincy

Bioscience agreed to a settlement of over $40 million in which defrauded consumers received

30% of their purchase price up to $70, and Prevagen had to eliminate its misleading claims.  The

Federal Trade Commission and New York Attorney General have also commenced an action against Quincy Bioscience.  On March 11, 2024, a jury in the Southern District of New York returned a verdict against Quincy Bioscience in all material respects.

17.     Neuriva claimed that it has "clinically proven natural ingredients" that "fuels 5 indicators of brain performance" including "Focus, Memory, Learning, Accuracy, and Concentration."  In reality, none of the Neuriva Products had ever been clinically studied.  The makers of Neuriva, Reckitt Benckiser LLC and RB Health (US) LLC, were sued in a putative class action that was recently settled for approximately $8 million and injunctive relief, providing consumers with proof of purchase $32.50 per purchase up to $65 and without proof of purchase $5 per purchase up to $20.

18.     There are numerous other makers of so-called brain-health supplements that make unfounded claims of efficacy and the competition among them is fierce.  When the marketplace for these brain snake oils is rife with outrageous claims, the only way for the snake oil purveyors to distinguish themselves is to lead the pack in mendacity.

## II.   ONNIT'S FALSE CLAIMS CONCERNING ALPHA BRAIN®

19.     Onnit's marketing of Alpha BRAIN® centers around its claims that it supports cognitive functions, including memory, mental speed and focus and that there is a clinical study that supports its claims.  That single 2016 clinical study[2] was funded by Onnit itself and does not support Alpha BRAIN®'s claims and is hereafter referred to as the "Onnit Funded Study."  A copy of the Solomon Study is attached as Exhibit A hereto.

20.     That study summarizes the ingredients in Alpha BRAIN® as follows:

---

[2]     Solomon, T. M., Leech, J., deBros, G. B., Murphy, C. A., Budson, A. E., Vassey, E. A., & Solomon, P. R. (2016). *A randomized, double-blind, placebo controlled, parallel group, efficacy study of Alpha BRAIN® administered orally*. Human Psychopharmacology, **31**(2), 135–143. PMID: 26876224.  https://doi.org/10.1002/hup.2520

Alpha BRAIN® (Onnit Labs LLC) is a multiingredient nutritional supplement that purports to enhance cognitive function in healthy adults. The commercially available product contains 12 naturally occurring compounds (Figure 1) including L-tyrosine; huperzine A, bacopa, phosphatidylserine and L-Alpha BRAIN® glycerylphosphorylcholine; vinpocetine and pterostilbene. Each compound present in the Alpha BRAIN® formula has evidence to support safe consumption and provide possible cognitive benefit (Barbagallo Sangiorgi et al., 1994; Sun et al., 1999; Sheng et al., 2001; Valikovics, 2007; Berry et al., 2011; Downey et al., 2013; Unno et al., 2013; Hirayama et al., 2014; Song et al., 2015; Steenbergen et al., 2015; Yang et al., 2015). In addition, the manufacturer has suggested that their specific formulation of compounds may increases acetylcholinergic neurotransmission and provide neuroprotective benefit. However, prior studies have been specific to the individual compounds found in Alpha BRAIN® and have not focused on the compound or formulation as a whole.

21.     The stated purpose of the study was as follows:

The purpose of the present study was to evaluate the efficacy of the nootropic Alpha BRAIN® on the manufacturers purported target population of healthy adults utilizing a randomized, double-blind, placebo controlled trial using standardized tests of learning, memory, attention, concentration, processing speed and executive functioning as well as measures of sleep.

22.     The abstract of the study summarizes its results as follows:

Compared with placebo, Alpha BRAIN® significantly improved on tasks of delayed verbal recall and executive functioning. Results also indicated significant time-by-group interaction in delayed verbal recall for the Alpha BRAIN® group.

However, the Onnit Funded Study's full text describes a very slight improvement only in one aspect of memory and **no** improvement for the other "cognitive domains," *i.e.*, the other foci of the study including memory generally, learning, attention, concentration, processing speed and executive functioning[3] as well as measures of sleep.

---

[3]     "Executive functioning" tests evaluate the cognitive abilities that enable the identification of goals, mental planning, behavior organization, and planning actions to achieve these goals.  Faria CA, Alves HVD, Charchat-Fichman H., *The most frequently used tests for assessing executive functions in aging*. Dement Neuropsychol. 2015 Apr-Jun;9(2):149-155, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5619353/.  Alpha BRAIN® does not make any specific claim to increase executive functioning but it is worth noting that one board certified neurologist commenting on the study was particularly critical of the abstract's claim that the study improved "executive functioning" when the study itself reflected a decrease in the executive functioning test performance in both the Alpha Brain® and placebo group, albeit a smaller decrease in the Alpha BRAIN® group.  So it was, in the words of that neurologist, "absurd to claim that Alpha improved executive function where people actually taking it did worse [than when they started the trial]."  https://www.youtube.com/watch?v=dRLGi6qfqpU.

23.     The Onnit Funded Study administered 26 cognitive tests to all the participants and reported the following results:

Table 2.   Cognitive test score (mean and SD) from +15 and +45 time points

| Outcome measure | +15 | | +45 | |
|---|---|---|---|---|
| | AB $n = 30$ | Placebo $n = 33$ | AB $n = 30$ | Placebo $n = 33$ |
| Logical Memory I Total | $M = 27.27$ SD = 6.13 | $M = 26.00$ SD = 6.54 | $M = 29.57$ SD = 7.24 | $M = 28.57$ SD = 3.20 |
| Logical Memory II Total | $M = 23.67$ SD = 6.55 | $M = 22.88$ SD = 6.21 | $M = 28.57$ SD = 9.99 | $M = 29.45$ SD = 6.87 |
| BVMT Trial I | $M = 8.63$   SD = 2.78 | $M = 8.55$   SD = 2.27 | $M = 9.20$   SD = 3.03 | $M = 10.24$ SD = 2.20 |
| BVMT Trial II | $M = 10.90$ SD = 1.51 | $M = 11.09$ SD = 1.28 | $M = 10.93$ SD = 2.01 | $M = 11.42$ SD = 1.75 |
| BVMT Trial III | $M = 11.40$ SD = 1.07 | $M = 11.33$ SD = 1.36 | $M = 11.50$ SD = 1.13 | $M = 11.70$ SD = 1.05 |
| BVMT Total Trials I–III | $M = 31.10$ SD = 4.83 | $M = 31.00$ SD = 4.21 | $M = 31.37$ SD = 5.68 | $M = 33.36$ SD = 4.68 |
| BVMT Delay Trial | $M = 11.33$ SD = 1.12 | $M = 11.30$ SD = 1.21 | $M = 11.37$ SD = 1.21 | $M = 11.58$ SD = 1.03 |
| F Total | $M = 14.10$ SD = 4.11 | $M = 14.03$ SD = 4.01 | $M = 17.77$ SD = 5.63 | $M = 17.48$ SD = 4.57 |
| A Total | $M = 13.53$ SD = 3.90 | $M = 12.91$ SD = 3.61 | $M = 14.00$ SD = 4.88 | $M = 14.82$ SD = 4.83 |
| S Total | $M = 16.13$ SD = 3.73 | $M = 16.27$ SD = 4.30 | $M = 14.63$ SD = 4.18 | $M = 14.55$ SD = 4.43 |
| FAS Total | $M = 43.77$ SD = 5.30 | $M = 42.15$ SD = 10.1 | $M = 46.40$ SD = 12.9 | $M = 46.82$ SD 11.21 |
| Animals Total | $M = 24.63$ SD = 5.30 | $M = 24.55$ SD = 5.46 | $M = 22.27$ SD = 5.93 | $M = 22.58$ SD = 4.22 |
| Symbol Span | $M = 30.23$ SD = 7.07 | $M = 29.85$ SD = 9.14 | $M = 31.97$ SD = 9.11 | $M = 30.30$ SD = 6.88 |
| Digit Symbol Coding | $M = 58.50$ SD = 12.55 | $M = 59.64$ SD = 9.93 | $M = 58.23$ SD = 8.55 | $M = 64.12$ SD = 1.49 |
| Trails A | $M = 22.87$ SD = 8.78 | $M = 22.39$ SD = 5.69 | $M = 20.70$ SD = 6.57 | $M = 20.58$ SD = 6.80 |
| Trails B | $M = 54.90$ SD = 17.5 | $M = 62.55$ SD = 21.6 | *$M = 43.33$ SD = 15.1 | *$M = 51.21$ SD = 16.4 |
| 20 Questions Total Score | $M = 25.40$ SD = 5.21 | $M = 25.82$ SD = 5.37 | $M = 26.30$ SD = 4.42 | $M = 25.00$ SD = 5.33 |
| 20 Questions Ach. Score | $M = 16.60$ SD = 3.43 | $M = 16.33$ SD = 2.45 | $M = 15.73$ SD = 2.16 | $M = 16.03$ SD = 2.50 |
| Stroop Inhibition Trial | $M = 44.23$ SD = 9.00 | $M = 44.64$ SD = 10.7 | $M = 42.63$ SD 7.97 | $M = 40.55$ SD = 8.26 |
| Stroop Switching Trial | $M = 54.17$ SD = 13.6 | $M = 52.58$ SD = 9.61 | $M = 51.17$ SD = 13.8 | $M = 48.79 = 12.97$ |
| CVLT Total Score | $M = 43.76$ SD 9.97 | $M = 43.21$ SD = 10.1 | $M = 46.40$ SD = 12.9 | $M = 46.84$ SD = 11.2 |
| CVLT Short Delay | $M = 11.27$ SD = 2.37 | $M = 11.39$ SD = 2.17 | $M = 11.39$ SD = 2.94 | $M = 12.39$ SD = 1.96 |
| CVLT Long Delay | $M = 11.13$ SD = 2.60 | $M = 11.09$ SD = 3.18 | *$M = 12.77$ SD = 2.2 | *$M = 11.33$ SD = 2.3 |
| PSAT Trial I | $M = 38.33$ SD = 13.18 | $M = 39.15$ SD = 11.8 | $M = 43.30$ SD = 13.0 | $M = 43.33$ SD = 10.3 |
| PSAT Trial II | $M = 28.83$ SD = 10.78 | $M = 28.64$ SD = 9.04 | $M = 30.03$ SD = 13.1 | $M = 32.12$ SD = 9.23 |
| Epworth Scale | $M = 10.50$ SD = 16.97 | $M = 28.64$ SD = 9.04 | $M = 7.23$   SD = 4.37 | $M = 7.72$   SD = 2.99 |

*$< 0.05$
$M$: mean
SD: standard deviation
BVMT: Brief Visual Memory Test
CVLT: California Verbal Learning Test
PSAT: Paced Serial Addition Test

In the only test where the Alpha BRAIN® group outperformed the placebo group — a version of a California Verbal Learning Test ("CVLT") Long Delay test in which participants were asked to learn a 16-item shopping list and subsequently recall the information after 20 minutes.[4]  However, no overall increase in memory can be claimed because the placebo group actually outperformed the Alpha BRAIN® group in the CVLT Total Score[5] and the CVLT Short Delay test.  So Alpha BRAIN® cannot claim that it improves memory generally when its own study did not find that Alpha BRAIN® improved memory generally without qualification.

---

4     https://en.wikipedia.org/wiki/California_Verbal_Learning_Test

5     The "CVLT Total Score" is the composite score for multiple CVLT tests, including total learning, short delay free recall, long delay free recall, and recognition measures.

24.     In the other 25 out of 26 tests, there was not a statistically significant difference between the Alpha BRAIN® group and the placebo group and, in many cases, the placebo group actually outperformed the Alpha BRAIN® group.  Significantly, of those tests that were designed to measure attention, concentration and processing speed, there was no statistically significant difference between the Alpha BRAIN® group and the placebo group, which renders Alpha BRAIN®'s claim to help focus and mental speed demonstrably false and its claim to generally improve memory misleading.  Again, the Onnit Funded Study clearly admits that fact by stating that "[n]o other group effects [other than the CVLT Long Delay test] reached statistical significance."

25.     In summary, Alpha BRAIN®'s claims that it improves focus, mental speed and memory generally are false as demonstrated by its own Onnit Funded Study.

**III.     PLAINTIFF PURCHASED AND USED ALPHA BRAIN®**

26.     Alpha BRAIN® costs approximately $487 - $649 per year, depending on bottle size and method of purchase.

27.     At the time Plaintiff was deceived by Alpha BRAIN®'s false and misleading marketing, he was a resident of Manhattan.

28.     Plaintiff made five purchases of Alpha BRAIN® from Onnit's website on February 5, 2020, April 26, 2021, May 10, 2021, June 24, 2021, and August 8, 2021.

29.     Plaintiff purchased Alpha BRAIN® in reliance on Alpha BRAIN®'s false and misleading claims to improve memory, focus, and mental processing speed backed by clinical support.  Plaintiff took Alpha BRAIN® but he did not experience improved memory, focus, and mental processing speed.

30.     Alpha BRAIN®'s prominent marketing claims that Alpha BRAIN® improves memory, focus, and mental processing speed was and is designed to mislead a reasonable

consumer acting reasonably under the circumstances, like Plaintiff here, into believing that Alpha BRAIN® had support for its claims to improve memory, focus, and mental processing speed.

31.     Had Plaintiff known that Alpha BRAIN®'s own Onnit Funded Study established that that Alpha BRAIN® was **not** shown to improve memory generally, focus and mental processing speed then he would not have purchased the Alpha BRAIN® product.

## CLASS DEFINITION AND ALLEGATIONS

32.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) Alpha BRAIN® which is manufactured, marketed, distributed and/or sold by Defendant (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Product for resale.

33.     Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any Class member may have suffered.

34.     **Numerosity**.  This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Onnit's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

35.     **Existence and Predominance of Common Questions of Law and Fact**.  This action involves questions of law and fact common to the Class.  The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, advertised, marketed, and/or sold the Class Product as improving memory, focus, concentration and mental processing speed.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as improving memory, focus, concentration and mental processing speed was and/or is false, fraudulent, deceptive, and/or misleading.

36.     **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Alpha BRAIN®'s false and misleading claims to improve memory, focus, concentration and mental processing speed.  Moreover, Plaintiff's claims are typical of the Class members' claims.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

37.     **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff purchased the Class Product, and he was harmed by Onnit's deceptive misrepresentations.  Plaintiff has therefore suffered an injury in fact as a result of Onnit's conduct, as did all Class members who purchased a Class Product. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

38.   **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Onnit.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

39.   Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class.  Unless a Class is certified, Onnit will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

## COUNT I
### (Violation of New York General Business Law Section 349)

40.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 39 as if fully set forth herein.

41.   New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

42.   By labeling, advertising, marketing, distributing, and/or selling the Class Product to Plaintiff and the other Class members as able to improve memory, focus, concentration and

mental processing speed, Onnit engaged in, and continues to engage in, deceptive acts and practices because the Class Product does not improve memory (with the exception of long delay memory), focus, concentration and mental processing speed.

43.     In taking these actions, Onnit failed to disclose material information about Alpha BRAIN®, including the fact that its own Onnit Funded Study showed no statistically significant improvement in memory (with the exception of long delay memory), focus, concentration and mental processing speed, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

44.     Onnit has deceptively advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

45.     Onnit's conduct was consumer oriented.

46.     Onnit engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

47.     Onnit's false claims were and are misleading in a material respect as to whether the Class Product leads to improvement in memory (with the exception of long delay memory), focus, concentration and mental processing.

48.     Based on, among other things, Onnit's knowing omission that the Class Product does not improve memory (with the exception of long delay memory), focus, concentration and mental processing, Plaintiff and other consumers were misled into purchasing the Class Product.

49.     Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Onnit's violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or

commerce, Plaintiff and the members of the Class have been substantially injured by purchasing the Class Product that is not what Onnit represents it to be.

50.     By reason of the foregoing, Onnit's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Onnit is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Onnit's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

51.     Onnit's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Onnit willfully and/or knowingly.  Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

## <u>COUNT II</u>
### (Violation of New York General Business Law Section 350)

52.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 51 as if fully set forth herein.

53.     Onnit's marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Onnit's sole possession and, thus, is "false advertising."

54.     No rational individual would purchase the Class Product at the premium prices at which they are sold if that individual knew that the Class Product does not improve memory (with the exception of long delay memory), focus, concentration and mental processing speed, which is how Onnit markets the Class Product.

55.     Onnit's advertisements and marketing of the Class Product as alleged were consumer oriented.

56.     Onnit's advertisements and marketing of the Class Product as alleged were misleading in a material respect.

57.     By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by purchasing a product that does not improve memory (with the exception of long delay memory), focus, concentration and mental.

58.     Onnit's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Onnit is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of Onnit's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Onnit as follows:

A.     Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.     On Plaintiff's Count I, awarding against Onnit the damages that Plaintiff and the other members of the Class have suffered as a result of Onnit's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.     On Plaintiff's Count II, awarding against Onnit the damages that Plaintiff and the other members of the Class have suffered as a result of Onnit's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

15

D.      On Plaintiff's Count I and II, awarding Plaintiff and the Class interest, costs, and

attorneys' fees.

E.      Awarding Plaintiff and the Class such other and further relief as this Court deems

just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      April 23, 2024
            White Plains, New York

                                        **DENLEA & CARTON LLP**


                            By:      ___*/s/ James R. Denlea*___
                                     James R. Denlea
                                     Jeffrey I. Carton
                                     Steven R. Schoenfeld
                                     Catherine H. Friesen
                                     2 Westchester Park Drive, Suite 410
                                     White Plains, New York 10604
                                     Tel.: (914) 331-0100
                                     jdenlea@denleacarton.com
                                     jcarton@denleacarton.com

                                     **KRAVIT SMITH LLP**

                                     Philip M. Smith
                                     75 South Broadway, Suite 400
                                     White Plains, New York 10601
                                     Tel.: (646) 493-8004
                                     psmith@kravitsmithllp.com


                                     *Attorneys for Plaintiff*